[Civ. No. 35837. Second Dist., Div. Four. Aug. 31, 1970.]

Estate of JAMES F. HINDS, Deceased.
H. DOUGLAS GAMBLE, Petitioner and Appellant, v.
LEONA I. HINDS, Objector and Respondent.

**COUNSEL**

LeVone A. Yardum and Andrew D. Amerson for Petitioner and Appellant.

Jack H. Faucett for Objector and Respondent.

James L. Grubbs and George W. Collins as Amici Curiae on behalf of Objector and Respondent.

**OPINION**

**DUNN, J.**—On October 27, 1967, James Hinds and H. Douglas Gamble entered into a written agreement under which Hinds was to purchase from Gamble 40,000 shares of the stock of Little Revenge, Inc., for $79,000. This constituted all of the stock of Little Revenge, Inc. The only asset of that corporation was a 53-foot sailboat named, logically enough, "Little Revenge." What Hinds actually purchased was the boat and, according to the evidence, the agreement provided for the purchase and sale of corporate stock so that he could avoid paying a sales tax.

The agreement further provided that, on November 3, 1967, Gamble would deliver to Hinds the stock certificate, and Hinds would pay Gamble $44,335.93, with the balance of $34,664.07 to be paid on June 1, 1969.

In October or November 1967 Gamble transferred the boat to Hinds. Subsequently, he also transferred the Little Revenge stock.

On January 8, 1968 Hinds executed a document entitled "Assignment."[1] This recited that Hinds had given Gamble a promissory note for

---

[1] Whether the instrument is technically an "assignment" was disputed at the hearing but this becomes irrelevant and was not argued on appeal.

$34,664.07, and that Gamble wished to have Hinds conditionally assign, as security for payment of the note, 25 shares of the stock of Donkins, Inc., owned by Hinds and held in trust for him by the law firm of Flynn & Rafferty. The assignment concluded with the following provision: "James Hinds agrees that in the event he does not pay said $34,664.07 by June 1, 1969, this document shall constitute an assignment of James Hinds' interest in 25 shares of Donkins, Inc. to H. Douglas Gamble."

On February 10, 1968, Hinds and his wife executed the promissory note referred to in the assignment.[2] By the terms of the note, the principal sum of $34,664.07, plus 7 percent simple interest, was payable on June 1, 1969.

Hinds died March 29, 1968. By letter dated May 23, 1969, an attorney representing Leona I. Hinds, the administratrix of Hinds' estate, informed Gamble that the estate was without funds to pay the note, and that the Donkins stock would not be transferred to him because the assignment was void. On June 19, 1969, after the note fell due, Gamble filed a petition for an order, pursuant to Probate Code section 850,[3] directing the administratrix to convey the Donkins stock to him. The administratrix filed objections to the petition, and a hearing was had. The court made an order denying the petition. Gamble appeals from that order.[4]

The trial court correctly determined that the assignment was a security agreement as defined in Commercial Code sections 9105, subdivision (1) (h), 1201, subdivision (37). Also see: *Greve* v. *Leger, Ltd.* (1966) 64 Cal.2d 853, 858 [52 Cal.Rptr. 9, 415 P.2d 824]. The enforceability of the agreement must be determined under the provisions of division 9 of the Commercial Code, section 9101 et seq., since these provisions apply to "security interests created by contract including . . . assignment" and to "any transaction (regardless of its form) which is intended to create a security interest in personal property including . . . instruments."[5] Commercial Code section 9102, subdivision (2), 9102, subdivision (1)(a). Accordingly, we briefly review pertinent code sections:

---

[2]Although the agreement of purchase and sale, the assignment and the promissory note were executed on different dates, they were intended to constitute one transaction, according to the evidence.

[3]Probate Code section 850: "If a person who is bound by a contract in writing . . . to transfer any personal property dies before making . . . transfer, and the decedent, if living, might have been compelled to make such . . . transfer, . . . the court in which proceedings are pending for the administration of the estate of the decedent may make a decree authorizing and directing the executor or administrator to . . . transfer the property to the person entitled thereto."

[4]Such an order is appealable under Code of Civil Procedure section 904.1, subdivision (k) and Probate Code section 1240.

[5]"Instruments" include shares of corporate stock. Commercial Code section 9105, subdivision (1)(g) and section 8102, subdivision (1)(a).

(a) Commercial Code section 9204, subdivision (1) provides that, unless explicit agreement postpones the time of attaching, a security interest attaches as soon as there is an "agreement . . . that it attach and value is given and the debtor has rights in the collateral." Here, the assignment satisfied these requirements. Appellant's security interest attached on January 8, 1968, the date of execution of the assignment.

(b) Commercial Code section 9304, subdivision (1) reads: ". . . A security interest in instruments . . . can be perfected only by the secured party's taking possession. . . ." Appellant did not take possession of the stock. Accordingly, the provisions of Commercial Code section 9305 govern: "A security interest in . . . instruments . . . may be perfected by the secured party's taking possession of the collateral. If such collateral . . . is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest."[6]

Appellant testified he "sent a notice of the assignment to the people [Flynn & Rafferty] I was told were the escrow holders." There was no evidence when such notice was sent and we find no basis for inferring the notification was given either before or after Hinds' death. For that reason, appellant's testimony is irrelevant, establishing nothing.

He further testified to learning, only shortly before the hearing, that Flynn & Rafferty were not the escrow holders. Evidence indicated Martin Kilgariff was the true escrow holder. Appellant sent no notice to him. However, a copy of the letter of May 23, 1969, mentioned earlier herein, was sent to Kilgariff, serving to notify him of appellant's security interest in the Donkins stock. Since there is no requirement that the secured party personally give notice, only that the bailee receive it, appellant's security interest was perfected on or about May 24, 1969, when Kilgariff presumably (Evid. Code, § 641) received the letter of May 23d.

■ We now consider how the foregoing circumstances affect the rights of the parties, having in mind Commercial Code section 9301 which states: "(1) . . . [A]n unperfected security interest is subordinate to the rights of . . . [a] person who becomes a lien creditor after the security interest attaches and before it is perfected unless the security interest is perfected within 10 days after it attaches. . . . (3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

---

[6]Under this section, possession may be by the secured party himself or by an agent on his behalf. (Uniform Com. Code, comment to § 9305.)

Admittedly, there are no lien creditors "by attachment, levy or the like," as specified in section 9301. However, respondent contends that, because the estate is insolvent, the administratrix must be considered a "receiver in equity" representing the general creditors of the estate and that appellant's security interest is, therefore, subordinate to the claims of the general creditors. In support of this contention, respondent cites *Goldstein* v. *Prien* (1956) 143 Cal.App.2d 123 [299 P.2d 344]. In that case, a chattel mortgage was not recorded until three months after its execution, and one month after the death of the mortgagor. The estate was insolvent. The executor sold the property covered by the mortgage after it had been recorded. A judgment declaring the mortgage void as against the purchasers was affirmed. The court reasoned that, under Civil Code section 2957,[7] the three-month delay in recording the mortgage rendered it void as to creditors existing prior to the recording and, since the estate was insolvent, the mortgage was likewise void as against the executor in his capacity as a "trustee" for creditors under Probate Code section 579.[8]

In essence, the court decided the executor was the proper person, under Probate Code section 579, to pursue the action although no creditor had requested him to do so.

That case may be readily distinguished from our own. There, Civil Code section 2957 made the mortgage "void" as against creditors of the mortgagor unless it was promptly recorded; it was not so recorded. The Probate and Civil Code sections applied to all "creditors," and were not limited in application to lien creditors. Probate Code section 579 was interpreted to allow the executor to proceed on behalf of the estate's creditors; but that ruling did not transform them into lienors. Rather, the estate's insolvency endowed the executor with authority to act for the creditors which authority he otherwise would not have had, considered only as executor for the estate.

Here, the Hinds estate admittedly was insolvent.[9] If it be conceded that,

---

[7]Civil Code section 2957 (repealed by Stats. 1963, ch. 819, § 2, effective January 1, 1965) provided: "A mortgage of personal property . . . is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless . . . 4. The mortgage . . . is recorded . . . at the time [it] is executed. . . ."

[8]Probate Code section 579: "If the decedent, in his lifetime, conveyed any real or personal property, or any right or interest therein, with intent to defraud his creditors, or to avoid any obligation due another, or made a conveyance that by law is void as against creditors, . . . and there is a deficiency of assets in the hands of the executor or administrator, the latter, on application of any creditor, must commence and prosecute to final judgment an action for the recovery of the same for the benefit of the creditors."

[9]The assets of the estate had an appraised value of $52,401.06. Approved claims against the estate totaled approximately $51,000. When the items which must be paid under Probate Code section 950 are added to these debts, the estate is insolvent.

under such circumstances, an executor or administrator is authorized to act in some fiduciary capacity for the creditors, that concession would not make them lien creditors nor would it transform the administrator into a "receiver in equity." Appointment of a receiver in equity is authorized under Code of Civil Procedure, section 564, subdivision 7, to which Commercial Code section 9301 presumably has reference. While it was long ago said that a special administrator of an estate has rights and duties similar to those of a receiver in equity (*Estate of Welch* (1895) 106 Cal. 427, 429 [39 P. 805]; *Estate of Moore* (1891) 88 Cal. 1, 3 [25 P. 915]), that is not to say they are identical. Had the Legislature intended to broaden its definition of "lien creditor" to include not only receivers in equity but also to include executors and administrators of insolvent estates, it easily could have said so, but did not. By the way of contrast, Commercial Code section 1201, subdivision (12) defines "creditor" to mean ". . . a lien creditor and any representative of creditors, including . . . a receiver in equity and an executor or administrator of an insolvent debtor's . . . estate." Thus, an executor or administrator of an insolvent estate is defined in the code as a "creditor" but not as a "lien creditor."

In the foregoing discussion we had assumed the statute authorized the administrator to act for the creditors. We now examine that assumption. Probate Code section 579 authorizes the executor or administrator of an insolvent estate to recover property whenever a decedent made a conveyance of it "with intent to defraud his creditors . . . or made a conveyance that by law is void as against creditors . . . ." Here, Hinds received from Gamble a boat, worth $80,000 according to the evidence, on which he paid out some $44,366 and owed $34,664. No creditors were defrauded. Gamble's failure to notify the escrow holder did not render his security "void" but merely subordinate to the claims of lien creditors. Since the code section authorized the executor to act on behalf of the general creditors only if the conveyance (assignment) was "void" as to them, it contained no authorization to act for the creditors under the circumstances. "Void" and "subordinate" do not connote the same thing.

The judgment is reversed, with directions to grant the relief requested in appellant's petition.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 28, 1970.